We'll hear argument now in the case of Railroad Health & Welfare Fund v. Mahoney. Mr. Hughes. Good morning, Your Honors. May it please the Court. I'm Mike Hughes. I represent the appellant, defendant, Mr. Clinton Mahoney, an individual. The primary issue on appeal here is whether the District Court erred in finding that Mr. Mahoney was individually liable to pay delinquent contributions owed by his company, Mahoney & Associates, LLC, of which he was the sole member, to the Plaintiff Railroad Maintenance Health & Welfare Fund based on the terms of a trust agreement. The District Court made that decision despite the fact that it is undisputed that Mr. Mahoney individually is not a party to the memorandum of agreement that he did sign on behalf of Mahoney & Associates. That memorandum of agreement incorporated by reference a collective bargaining agreement and required Mahoney & Associates to recognize the union as the bargaining representative of Mahoney & Associates employees. Also incorporated by reference the trust agreement requiring Mahoney & Associates to abide by the terms of the trust agreement. Nothing on the face of the memorandum of agreement required any individual obligation on the part of Mr. Mahoney and he did not understand at the time he was undertaking any individual obligations. It's he asked for that because the master agreement specifically says copies of the trust agreement are available to the employer upon request. He did not, Your Honor. It's not our position that he asked. It's not our position as the plaintiff argues that the plaintiff had any obligation to give it to him. That's not our position. Our position is the nature in which he signed the agreement which was specifically only in a representative capacity. He signed it under the name of Mahoney & Associates LLC next to the word by his name and then over the designation of himself as owner. He did not sign it in an individual capacity. We have a, in fact, a judicial admission by the plaintiff that not only did Mr. Mahoney sign that agreement in his representative capacity but also that he did not sign it in his individual capacity. That he did not sign any agreement with either the union or the fund plaintiff in his individual capacity. Our position is that based on ERISA which says that owners are not liable for delinquent contributions unless they are a party to the agreement establishing those contributions themselves or unless under state law that owner is otherwise bound by corporate obligations. Where would state law get into the picture? State law, this is, it's the terms of a trust agreement and a memorandum of agreement that are at issue. Regulated by ERISA. Regulated by ERISA. And we also have the interpretation of a collective bargaining agreement. And the Supreme Court has told us that both collective bargaining agreements and ERISA are governed by federal statutes and when they run out by federal common law. So how would Illinois law get into the picture? In this instance, under 7th Circuit precedent. I'm not asking about this instance. I'm asking about the law. The law states. What is the rule of decision under labor law and ERISA? The rule of decision under Sullivan v. Cox, 7th Circuit case. I'm asking about the Supreme Court. Under, well, I don't know if the Supreme Court has answered this question. It has addressed this question multiple times. In, for example, Firestone Tire v. Brook, 1989. In the context of whether or not the signature of an individual in this representative capacity. I'm not asking about the signature of an individual. I'm asking about the choice of law question. Do we determine the effect of that signature under state law or under federal common law? One or the other. And then we can debate what the effect of the signature is. Federal common law indicates that you look to state law to determine. Let us first ask, are we using federal common law? I think the Supreme Court says the answer is yes, but maybe you have some other answer. We're using federal common law. We use federal common law. Often federal common law draws from state principles. But of course in Brook, the Supreme Court drew from the restatement of trust, not from any one state's law. Because it wanted a synthetic statement of state principles. Right? So I'm puzzled why we would turn to Illinois rather than state law norms in a restatement, for example. Because that's what the Supreme Court did. I guess my response to that, Your Honor, is that under the precedent that has answered this question within this circuit, it has looked to the state law cases to decide whether or not there is a... So you think we can contradict the Supreme Court? I do not. The Supreme Court says use a restatement. Seventh Circuit says do something else. Who wins? I understand that... One of the problems that leads to Seventh Circuit cases is when the parties don't address a choice of law issue, which is what's happened in this case. The failure of the parties to address a choice of law issue can lead to, let's just say, inaccurate language and appellate opinions. But we are bound by the Supreme Court. And I appreciate that, Your Honor. I don't mean to suggest that we do not follow Supreme Court law. But if we're looking to state court norms under federal common law, the most applicable state court... So what is the state court norm? You've pointed to some Illinois law. Your adversary has pointed to some Illinois law. Is there a restatement treatment of this? What is the norm among the states on questions like this? Your Honor, I don't know if I can If it's idiosyncratic, it's less likely to be incorporated into federal common law. And I understand that, Your Honor. I believe that because it has been repeatedly incorporated into federal law under the common law question of how we interpret this within this district, that leaning on... I don't have any reason to believe that it would be against the Supreme Court. But it is not a norm. And that is the norm. That is what the district court used, and it's what the parties used here as well, Your Honor. To the extent that's the norm, that when an individual signs in a representative capacity, he does not bind himself individually unless there's something else in the contract that contradicts that, which then creates an issue of fact. And the issue of fact... Why wouldn't the trust agreement here create an issue of fact? I think it does create an issue of fact. I thought you were saying in your briefing that the signing of owner next to his name, end of story. No, we're not saying that at all. And I think the plaintiff misinterprets that we're saying there's no incorporation by reference or anything like that here. We're not saying that. We're saying that it does create an issue of fact. And so that at the least, the very least, this court should remand that issue back to the district court for a decision of that issue of fact, which the cases say need to be decided by the trier of fact. But in this situation, because we have a judicial admission by the plaintiff fund that this agreement was not signed in an individual capacity, our position is, under any norm, if there is a judicial admission that this was not signed in an individual capacity, and also was not signed as a surety or guarantor of any obligations of the employer, then that ends the story of the issue of fact. It's decided at summary judgment. We have a judicial admission that this was not signed in any capacity other than a representative capacity. The case cited by the district court for saying that when there's two obligations referenced in the agreement, if it's signed in a representative capacity, but there's something else in the individual obligation, if there's two separate sets of obligations, that removes the ambiguity. It means the signature is a dual signature. First off, the facts of that case, which is the Greenberg case, the Railway Express Agency versus Greenberg case, are not at all close to what we have here. In that case, in bold capital letters directly above the signature block, the language stated, the undersigned has read and agrees to the terms and conditions of this contract set forth herein, and further personally guarantees all debts incurred in the name of the firm. That was set directly above the signature block, and in signing, the individual did not place a designation of what his corporate affiliation was at all. He just signed his name. It was under the name of the company, and next to by, but it did not indicate that he was signing in anything other than both capacities, because that was what introduced the signature block directly above. The district court found that when there are two different sets of obligations, that the signature has a dual effect. That is not supported by the Illinois cases in Knightsbridge, Feldman, and Pittman that we cited. Specifically in Knightsbridge, there were two separate obligations. It was a realty purchase agreement where a company was buying real property from another company or another realty owner, and the individual signed with all the earmarks of a representative capacity signature under his company's name next to the word by, and with its designation of his, he's the president, next to his name. In the body of the agreement, there was a separate, other than the company buying the real property and paying on installment terms, there was an obligation by the individual saying, I agree that I will sign a personal guarantee at closing. A copy of the personal guarantee is enclosed here with and incorporated by reference. Unlike Greenberg, which was relied upon by the district court, the Knightsbridge court said, we can't give summary judgment to the plaintiff on that case that that signature invoked an individual obligation. That's a question of fact that has to go to the jury. Same with Feldman. In the Feldman case, the individual signed, the executive signed advertising agreements to purchase advertising in Yellow Book four different times. Every time he signed, he signed it under his company's name next to the word by, with his designation as president next to it. But above his signature, it said, I individually, pursuant to a cross-reference to a paragraph elsewhere in the agreement, and for the firm obligate to pay the obligations here. And a cross-reference then, if you look at that other paragraph in the agreement, stated in fine print that he was taking on a guarantee of the payments individually. The district court in that case said, we cannot give summary judgment on that case to the plaintiff. It has to go to the trier of fact to decide whether or not the intent of the individual was to be personally bound. I want to, I'm going to reserve the rest of my time unless you have any further questions. Thank you. Thank you, Mr. Hughes. Mr. Walters. Thank you. My name is John Walters. I represent the Railroad Maintenance and Industrial Health and Welfare Fund. It's a welfare fund, ERISA fund located in Springfield, Illinois. To directly address your question, Judge Easterbrook, count five, which is the count at issue in this case, is purely a contractual issue. And it is under Illinois law that this case should be decided. Why? Because ERISA doesn't get involved with this. This is a specific contract. This is a question about whether somebody owes money to a pension and welfare fund regulated by ERISA. And governed by a collective bargaining agreement. The Supreme Court has held that both collective bargaining agreements and ERISA are governed exclusively by federal law. There's even a preemption clause. I understand that, but. So how does state law get into it? Because. What do you have to say about Firestone, for example? Well, Firestone basically deals with the discretion of the trustees. And it holds that it's governed by federal common law, which the court discovered by consulting the restatement of trust. It's a choice of law case as well as a substantive case. Or think about United States against Best Foods dealing with piercing the corporate veil under federal common law and so on. But that case had been rejected by Justice Thomas's decision. I don't believe one justice can reject a majority opinion of the Supreme Court. Well, the court rejected that issue as far as whether piercing the corporate veil is a federal action. But the majority held that it is in Best Foods. Look, there's a serious problem in this case. We have not had an adversarial presentation about choice of law. The Supreme Court's cases seem to me to require a federal choice of law, which might then incorporate state law. But we've been told by the Supreme Court in Cayman against Kemper Financial that we ought to apply the right body of law, even if the parties agree on the wrong body of law. So I would like the parties to file supplemental briefs within 14 days addressing choice of law in this case. And then, to the extent they believe state law is relevant, addressing the question whether Illinois applies the fiduciary shield doctrine in a normal way or an abnormal way compared to other states. Very well. Thank you, Your Honor. May I make one more argument about jurisdiction? You have 12 minutes to go. Thank you. We had filed a motion to dismiss for lack of jurisdiction because we had filed—basically, the court entered judgment in an opinion on July 31, 2024. The defendant did not file a notice of appeal until September 26, 2024. And that was obviously outside the 30-day deadline. Now, the linchpin to that is that the judgment itself did not have a monetary amount in it. However, we had filed a motion under Rule 68, and that was filed on August 6, 2024. And within that is the argument that— When did the district court first quantify the judgment? Quantify what? The judgment. Put down an amount of money that must be paid. When did that happen? That happened not until October 11. And the notice of appeal was filed on? That was filed the same—there was a second notice of appeal filed the same day. Yes. Well, there we are. Well, the time doesn't start to run until there's an appealable judgment. And until there is a money judgment, the case is still live in the district court. Well, there are cases that say that if there is an indication of finality within the documents, then the monetary amount can be— But there has to be specificity about the relief in the judgment. And there's no way to tell what the relief is when you're seeking monetary damages, and there's no number. Well, there was a number that— There's no number in the final judgment that was entered on July 31 as to what the damages were. Right. That's correct. So that is not a final judgment because the relief isn't set forth. Well, we would submit that there are cases that say finality exists and the addition of the monetary amount can be added in pursuant to Rule 68. And that's our argument here because everybody knew there was no dispute about the amount. It was simply an omission by the district court. And then you wait for the district court to solve the problem. You should ask the district court. Of course, you did ask. I did. Yeah, we did. Yes. Yes. But we believe that under Rule 68, that doesn't hold the timeline to appeal. Some courts have held that it does. There's two courts, actually, the Second Circuit and the Ninth Circuit said it did. It's okay. The Supreme Court has held the same thing. That's Liberty Mutual against Wetzel, 424 U.S. Neither side mentions it. Justice Sotomayor had issued a concurring opinion, though. A concurring opinion does not change the results of decisions by a majority of the Supreme Court. Liberty Mutual against Wetzel holds that there's no appealable judgment until damages have been established. Right? It's not a hard principle. Very well. I respect your opinion, Judge. It's not my opinion. It's a decision of the Supreme Court of the United States. I could imagine a different opinion, but it is, well, what it is. Okay. May I proceed? Please. You have eight minutes. Thank you. There is also the issue of attorney fees. In this case, the plaintiff sought attorney fees pursuant to the trust agreement, and the district court allowed those fees. Defendant has disputed our right to those fees. But the trust agreement is very clear. Defendant had actually said that, yes, we agree we're liable. I'm not sure how the trust agreement is so clear here. The trust agreement, assuming you're successful in your argument that he's liable in his individual capacity, the trust agreement talks about liability for any underpayment or other procuratory loss to the fund. It doesn't say anything about attorney fees. Well, but it also says that they are obligated to comply with all other requirements of the trust agreement, which the other requirements of the trust agreement, this is the rationale for the district court, are that they have to promptly pay contributions, they have to promptly submit report forms, and they have to, if there are delinquent contributions, they pay liquidated damages, as well as if there is a dispute and attorneys have to get involved, there are attorney fees as well. There's other portions besides just in 4.8 that you reference that are requirements of the trust, and within Section 4.8 it basically requires the individual owners to be liable for the obligations or the requirement. But not the fees of attorneys. Well, it says underpayments and other procuratory losses, but below that it says attorney fees as well. Not for the owners. Well, it says or otherwise bound. And if you're going to require owners to be liable, which Section 4.8 does, for the other compliance with the other requirements within the trust agreement, then one of those other requirements is payment of attorney fees. So we believe that the attorney fee award was correctly decided, as well as the amount of fees. So at this point, if there aren't any more questions, I will yield to opposing counsel. Thank you, counsel. And we will have briefs submitted, supplemental briefs. Thank you. Thank you. Anything further, Mr. Hughes? Yes. I just wanted to address the arguments on jurisdiction briefly. We did cite Wetzel in our briefing, and we pointed that out. Not only was the July 31st agreement not final and appealable, but there was no separate document. The plaintiff concedes that the separate document judgment was not conforming to Rule 58. That didn't happen until October 11th, which is when we filed our second notice of appeal. With respect to attorney fees, in Section 4.8, Judge St. Eve is correct to question that the obligation for the individual owners is triggered on their knowledge of some other breach. It doesn't put on them an obligation to comply themselves with every other provision of the article. It just says, if you have knowledge of a brief, you can be liable for the delinquent contributions and other pecuniary costs associated with that, which it states later, just right below that, that includes the audit fees and some other incidental fees there. If it goes to litigation, or if it's referred to counsel, that portion of 4.8 says that employers party to the agreement or employers otherwise bound to the agreement are liable for attorney's fees and costs. In this case, Mr. Mahoney is not an employer, and the language, otherwise bound, it's modified by employer. Employer modifies both party of the agreement or otherwise bound. If you remove that, the otherwise bound doesn't make sense. You'd have to add language saying a person otherwise bound. You might ask, well, how could some employer be otherwise bound? Specifically the way that the fund here tried to bind the other two defendants in this case, through successor liability, through alter ego liability, through other federal common law liability under ERISA, such as common enterprise and control group liability. So those are ways it does not, the specific language of 4.8 does not allow attorney's fees to be assessed against an individual owner, even if he's liable, which we don't believe he is, for the delinquent contributions. With respect to the, if the court disagrees with that, with respect to the amount of the agreement, none of the amount of the plaintiff's fees were stated with any particularity. He didn't submit the bills. He submitted what he said was adjusted on his own. Thank you, counsel. Thank you. The case is taken under advisement.